IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-00887-REB-KMT

STATE OF COLORADO ex rel. JOHN W. SUTHERS, Attorney General for the State of Colorado, and
LAURA E. UDIS, Administrator, Uniform Consumer Credit Code,

Plaintiffs,

v.

WESTERN SKY FINANCIAL, L.L.C., and
MARTIN A. WEBB,

Defendants.

## PLAINTIFFS' MOTION TO REMAND

Plaintiffs, State of Colorado ex rel. John W. Suthers, Attorney General for the State of Colorado, and Laura E. Udis, Administrator, Uniform Consumer Credit Code (collectively the State), hereby move this Court, pursuant to 28 U.S.C. § 1447(c), to remand this case to the Denver District Court. In support, the State states:

### INTRODUCTION

1. By their Notice of Removal, dated April 5, 2011 (Notice, Doc. 1), defendants, Western Sky Financial, L.L.C. (Western Sky), and Martin A. Webb (Webb), invoke this Court's federal question jurisdiction under 28 U.S.C. § 1331 (Notice ¶5). They claim that the "Indian Commerce Clause . . . and associated tribal law" "completely preempt" the State's Complaint, dated January 27, 2011 (Doc. 2) (Notice ¶14).

2. Just as did the removing defendant in *Colo. ex rel. Salazar v. ACE Cash Express, Inc.*, 188 F.Supp.2d 1282, 1285 (D. Colo. 2002), defendants here "'confuse[] what this case *is* and is *not* about'" (emphasis in original). Here, the Complaint *strictly*

concerns a *non-tribal* corporation's illegal, usurious, and unlicensed loan-making in Colorado to Colorado consumers in violation of *state* law. It alleges *no* claims arising under *any* federal law, let alone under the Indian Commerce Clause or tribal law.

3. The Court should remand this case back to state court. It also should award the State its costs and expenses, including attorney's fees.

## **FACTS AND PROCEDURAL HISTORY**

4. Western Sky is a limited liability company organized under South Dakota state law. It was formed in May 2009 by the filing of Articles of Organization with the South Dakota Secretary of State. *See* Exhibit 1 (Western Sky's Articles of Organization). At that time, and up until February 9, 2011, its sole member was another South Dakota limited liability company, PayDay Financial, L.L.C. *See* Exhibit 2 (PayDay Financial, L.L.C.'s Articles of Organization filed with the South Dakota Secretary of State). On February 9, 2011, Western Sky filed a "dissociation notice" with the South Dakota Secretary of State (Exhibit 3), "dissociating" PayDay Financial as its sole member.

5. Western Sky is not tribally owned or operated. Instead, defendants admit it is privately held and solely managed by Webb. *See* Exhibits 4 and 5 (affidavit and corporate disclosure statement, respectively, filed in *Comm'r of Fin. Regulation v. Western Sky Fin., LLC*, Civil Action No. 11-cv-00735 (D. Md.)).

6. The State commenced this action on January 27, 2011, by filing its Complaint in Denver District Court. The State alleges that Western Sky makes illegal, usurious, and unlicensed loans in Colorado to Colorado consumers in violation of Colorado's Uniform Consumer Credit Code, § 5-1-101, *et seq.*, C.R.S. 2010 (Code), and Consumer Protection Act, § 6-1-101, *et seq.*, C.R.S. 2010 (CPA). In particular, Western Sky

transacts business in Colorado by making small consumer loans, in amounts ranging from about $400 to $2,600, to Colorado consumers via the internet. Western Sky's loans have annual percentage rates from around 140% to over 300%. *See* Complaint ¶¶6-11. The State seeks injunctive and other relief, including consumer restitution and penalties, pursuant to the Code and CPA. *See* Complaint ¶1.

7. The State obtained service of summonses and the Complaint upon defendants on March 7, 2011. *See* Doc. 3.

8. On April 5, 2011, defendants removed this action to this Court. Their Notice asserts that the State's "state-law claims . . . are completely preempted by federal law" (Notice ¶11).

9. Other facts will be stated in the Argument, where appropriate. As the State shows, because no federal statute completely displaces the State's state-law-based claims, and because defendants' tribal sovereignty issues are, if anything, defensive matters, defendants improperly removed. The Court should remand this matter to Denver District Court and award the State its costs, expenses, and attorney's fees.

## **ARGUMENT**

### A. General Removal Principles

10. The removal principles are well established. Removal statutes are strictly construed and all doubts are resolved against removal. *See, e.g.*, *Fajen v. Found. Reserve Ins. Co.*, 683 F.2d 331, 333 (10th Cir. 1982). The "well-pleaded complaint" rule makes the plaintiff the "'master of the claim.'" *E.g.*, *Karnes v. Boeing Co.*, 335 F.3d 1189, 1192 (10th Cir. 2003). The federal question giving rise to jurisdiction "must appear on the face of the complaint," *id.*; unaided by defendant's answer or removal notice.

*See, e.g., Fajen*, 683 F.2d at 333. A defendant "'cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law.'" *Karnes*, 335 F.3d at 1193, quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386 (1987). Neither a plaintiff's anticipation of a federal law defense nor a defendant's assertion of such a defense gives rise to removal jurisdiction. *See, e.g., Schmeling v. NORDAM*, 97 F.3d 1336, 1339 (10th Cir. 1996).

11. The burden is on the removing party to show, by a preponderance, that removal jurisdiction exists. *See, e.g., Karnes*, 335 F.3d at 1193; *accord, e.g., West Ridge Group, LLC v. Anselmo*, 2010 WL 2543585, *1 (D. Colo. 2010).

12. The "complete preemption" doctrine is an exception to the "well-pleaded complaint" rule. "Complete preemption" is "a term of art." *Schmeling*, 97 F.3d at 1342. Rather than the "ordinary" preemption of state law by federal law, it means the "*replacement* of a state cause of action with a federal one." *Id.* (emphasis added). I.e., complete preemption exists only "when a federal statute wholly displaces the state-law cause of action." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003); *accord, Aetna Health Inc. v. Davila*, 542 U.S. 200, 207-208 (2004). Further, the federal statute must provide "the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action." *Beneficial,* 539 U.S. at 8.[1]

13. The Supreme Court has found complete preemption in only three instances: certain cases under the Labor Management Relations Act, the Employee Retirement

---

[1] *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005), upon which defendants rely (*see* Notice ¶12), is not to the contrary. It is an "arising under," and not a "complete preemption," case. There, the Court upheld the removal of a quiet title action challenging the validity of an IRS sale of property pursuant to federal tax law. It reasoned that compliance with the tax statutes was "an essential element of [the] quiet title claim." *Id.* at 315. Here, the Complaint arises *solely* under state law.

Income Security Act, and the National Bank Act. *See id.*, at 6-11.[2]

14. The touchstone is congressional intent: did Congress, in the federal law, intend to create removal jurisdiction? Absent such "'clear congressional intent,'" prudence compels remand. *Schmeling*, 97 F.3d at 1342, quoting *Caterpillar*, *supra*.

**B. Defendants Improperly Removed**

15. Here, the State's Complaint "presents no federal question on its face." *Colo. ex rel. Salazar*, *supra*, 188 F.Supp.2d at 1284. Instead, as there, the Complaint here alleges defendants make unlicensed, usurious loans in violation of the Code and CPA. *See id.* Just as there, the Complaint "'*strictly* is about . . . violations of *state* law. It alleges *no* claims'" under *any* federal statute. *Id.* at 1285 (emphasis in original).

16. Defendants do not even so claim. Their Notice *nowhere* cites a federal statute in which Congress "wholly displace[d]" the State's state-law causes of action and in which it provided "procedures and remedies governing that cause of action." *Beneficial*, 539 U.S. at 8. This, alone, should compel remand.

17. Lacking a completely-preemptive statute, defendants instead rely on various tribal sovereignty principles. These include: tribal immunity; the Indian Commerce Clause; and unspecified "associated tribal law." Notice ¶¶11, 13, 14. Even assuming defendants can avail themselves of such tribal sovereignty principles – a point to which the State returns, *see infra*, ¶¶33-37 – these principles aid defendants naught.

18. For nearly 100 years, the U.S. Supreme Court has held that tribal sovereignty issues are defensive matters that do not give rise to federal question

---

[2] The Court noted that it also found federal jurisdiction to hear possessory land claims brought by Indian tribes, *see id.* at 8 n.4; but the analysis in that special circumstance did not aid the complete preemption analysis, *see id*.

5

jurisdiction. *See Taylor v. Anderson*, 234 U.S. 74, 75 (1914) (federal statutes restricting alienation of tribal allotments did not create federal question jurisdiction), cited in *Aetna*, *supra*, 542 U.S. at 207.

19. Specifically, over twenty years ago, in *Okla. Tax Comm'n v. Graham*, 489 U.S. 838 (1989), the Court expressly rejected the claim that tribal immunity provided removal jurisdiction. There, Oklahoma sued an Indian tribe in state court to collect unpaid taxes. The tribe removed to federal court, asserting federal question jurisdiction based on its status as an immune sovereign. The Tenth Circuit affirmed the district court's refusal to remand the case, concluding that Oklahoma's complaint, "although facially based on state law, contained the 'implicit federal question' of tribal immunity." *Id.* at 839-840.

20. The Supreme Court reversed. After discussing *Caterpillar's* "well-pleaded complaint" rule, it held that, while a tribe's status as an immune sovereign

> may provide a federal defense to Oklahoma's claims . . . it has long been settled that the existence of a federal immunity to the claims asserted does not convert a suit otherwise arising under state law into one which, in the statutory sense, arises under federal law.

*Id.* at 841. Because the "jurisdictional question . . . is not affected by the fact that tribal immunity is governed by federal law," the Court held the case "was improperly removed." *Id.* at 841-842 (citing *Gully v. First Nat'l Bank*, 299 U.S. 109 (1936)).

21. Defendants' Indian Commerce Clause reliance fares no better. The Indian Commerce Clause has no preemptive powers whatsoever, let alone is it *completely* preemptive. For example, in *Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222 (10th Cir. 2010), the Tenth Circuit dismissed a tribe's claim, based on the Indian

6

Commerce Clause, that Oklahoma could not enforce its "cigarette tax enforcement scheme to interfere with [the tribe's] vehicles while transporting cigarettes between Indian country." *Id.* at 1236. It held that it "cannot seriously [be argued] that the Indian Commerce Clause, *of its own force*, automatically bars or preempts a state from enforcing its tax laws outside Indian country." *Id.* at 1237 (emphasis in original).

22. Instead, the Indian Commerce Clause is but an enabling clause: it provides Congress with the "*power* to legislate in the field of Indian affairs." *Cotton Petroleum Corp. v. New Mexico*, 490 U.S. 163, 192 (1989) (emphasis added); *see also id.*, 192-193 (contrasting Interstate and Indian Commerce Clauses).

23. In a case very similar to that here, the court in *Idaho ex rel. Wasden v. Native Wholesale Supply Co.*, 2009 WL 940731 (D. Idaho 2009), rejected the claim the Indian Commerce Clause was completely preemptive. There, Idaho brought a state court tax collection case against a corporation wholly owned by a tribal member and located on a reservation. The corporation removed, asserting federal question jurisdiction under the Indian Commerce Clause. The court was unimpressed. Observing that Idaho's complaint "only asserts violation of state law" and that the corporation "failed to present any statute or treaty expressing Congress's intent to regulate the entire field of Native American commerce," *id.* at **2, 3; it remanded.

24. So, too, in *Wiener v. Wampanoag Aquinnah Shellfish Hatchery Corp.*, 223 F.Supp.2d 346 (D. Mass. 2002), the court remanded a town zoning official's state-court case against a tribe alleging the tribe violated town zoning laws in connection with the tribe's fish hatchery. The tribe removed the case, claiming that the town's case implicated the Federal Wampanoag Settlement Act and gave rise to federal question

7

jurisdiction. The court disagreed. Noting that the "federal government has not completely preempted the field of Indian affairs," 223 F.Supp.2d at 352 n.10 (citing *Graham, supra*); the court held that the right the town sought to vindicate was one "created by the state." *Id.* at 353.[3]

25. Third, defendants claim that "tribal sovereignty," "tribal law," and "tribal rights" prevent the State from regulating "commercial activity on Indian lands" (Notice ¶¶11, 13). They rely on the Complaint's allegations that recite various provisions and representations in defendants' loan agreements and websites. These provisions and representations purport to make defendants' loans governed by the Indian Commerce Clause and tribal law, purport to subject the consumer to these laws and the "exclusive . . . jurisdiction" of a tribal court, and assert that defendants operate within reservation boundaries (Notice ¶8). Defendants contend that whether Colorado law governs over tribal law or whether a consumer's consent to tribal over state court jurisdiction is enforceable "will depend on application of federal law" (Notice ¶13). Because these are, if anything, *defensive* matters, they do not provide removal jurisdiction. *See*, *e.g.*, *Taylor*, *supra*. These claims also fail on their merits.

26. Defendants seemingly claim that the State, by its allegations reciting their loans' and websites' provisions, admits that these provisions govern. Quite the

---

[3] Defendants' cases (*see* Notice ¶11) are inapposite. Only one, *Gaming Corp. of Am. v. Dorsey & Whitney*, 88 F.3d 536 (8th Cir. 1996), involved removal. There, the Eighth Circuit held the Indian Gaming Regulation Act completely preempted "the field of Indian gaming regulation." *Id.* at 539; *but see*, *e.g.*, *County of Madera v. Picayune Rancheria of the Chukchansi Indians*, 467 F.Supp.2d 993, 1002 (E.D. Cal. 2006) (IGRA did not support removal of county's nuisance abatement suit against tribal casino); *First Am. Casino v. Eastern Pequot Nation*, 175 F.Supp.2d 205, 208-209 (D. Conn. 2000) (IGRA did not provide removal jurisdiction for breach of gaming management contract suit against non-federally recognized tribe). Their other cases do not involve removal or complete preemption, and none involved a state's regulation of off-reservation conduct.

8

opposite. These allegations simply provide the factual predicate underlying the State's claims that, by these provisions, defendants deceive consumers and violate Colorado law. *See*, *e.g.*, Code § 5-1-201(8) (invalidating choice-of-law and choice-of-forum provisions); *see also Colo. ex rel. Salazar v. Cash Now Store, Inc.*, 31 P.3d 161, 166 (Colo. 2001) (the Code is to be "liberally construed" to protect consumers "against unfair practices by some suppliers of consumer credit").

27. Nor does defendants' inclusion of these provisions make them so. Here, by this action the State is exercising its police powers and enforcing Colorado's public policy, embodied in the Code and CPA, to protect Colorado consumers against illegal, usurious, and unlicensed lending. In doing so, the State is not bound by defendants' contractual provisions. *See*, *e.g.*, *Penn. Dep't of Banking v. NCAS, LLC*, 948 A.2d 752, 759 (Pa. 2008) (state regulator, in enforcing state law, not bound by payday lender's choice-of-law provision);[4] *BankWest, Inc. v. Oxendine*, 598 S.E.2d 343, 347 (Ga. Ct. App. 2004) (lender who makes loans to forum state's consumers cannot by virtue of loan agreement's choice-of-law provision exempt itself "from investigation for potential violations of [forum state's] usury laws"); *see also Brack v. Omni Loan Co.*, 80 Cal.Rptr.3d 275, 284-285 (Cal. Ct. App. 2008) (California public policy set forth in its consumer lending law could not be circumvented by Nevada lender's choice-of-law provision in consumer loan agreement).

28. So, too, and defendants notwithstanding, the State is not regulating "commercial activity on Indian lands in South Dakota" or otherwise "interfer[ing]" with on-reservation affairs (Notice ¶11; *see id.* ¶13). This case strictly is about defendants'

---

[4] Notably, the Ballard Spahr firm, defendants' lawyers here, represented the payday lender there. *See id.*, 948 A.2d at 754.

9

Colorado activities; it concerns defendants' *Colorado* loan making *in Colorado to Colorado consumers.* I.e., it involves *off-reservation* activity.

29. Defendants effectively concede as much. In their Motion to Dismiss, dated April 12, 2011 (Doc. 9), defendants did not assert any personal jurisdictional defenses; they waived any such defenses. *See* Fed. R. Civ. P. 12(h)(1). Thus, they concede that, by their loan making, they transacted business *in Colorado* and subjected themselves to Colorado's jurisdiction.

30. Dispositive is *Colo. ex rel. Suthers v. Cash Advance*, 205 P.3d 389 (Colo. App. 2008), *aff'd*, 242 P.3d 1099 (Colo. 2010). There, the State sought to investigate allegedly tribal entities' usurious loan making via the internet in Colorado to Colorado consumers in violation of the Code and CPA. *See id.*, 205 P.3d at 394. Observing that "[v]iolations of the [Code] and [CPA] would have significant off-reservation effects that would require the [State's] intervention," the court held that internet loan making to Colorado consumers (1) constituted off-reservation activity, and (2) fell within Colorado's statutory regulatory regime; and that, therefore, the State had jurisdiction to "investigate, criminally prosecute, seek declaratory and injunctive relief, and pursue civil remedies for conduct occurring within its borders." *Id.* at 400, 401, 403.

31. Similarly, in *Quik Payday, Inc. v. Stork*, 509 F.Supp.2d 974 (D. Kan. 2007); *aff'd*, 549 F.3d 1302 (10th Cir. 2008), *cert. denied*, 129 S.Ct. 2062 (2009), the court rejected a Utah-based internet lender's challenge that Kansas was attempting to "extraterritorially" enforce Kansas law by regulating the lender's loan making to Kansas consumers. Citing Tenth Circuit and other law dating to the 1970's, including *Aldens, Inc. v. Ryan*, 571 F.2d 1159 (10th Cir. 1978), it held that, by making loans to Kansas

consumers, the lender necessarily engaged in conduct occurring in Kansas and that Kansas properly could regulate the lender's in-Kansas activity. *See Quik Payday*, 509 F.Supp.2d at 981-982, 984-985; *see also*, *e.g.*, *Triumph Fin. Servs., LLC v. Colorado*, Case No. CV-01-105-S-BLW (D. Idaho, Sept. 6, 2001), slip op. at 5 (memorandum decision and order)[5] (rejecting Idaho-based internet lender's claim that State sought to regulate lender's "exclusively in Idaho" activities; State instead was regulating "the actual extension of credit to Colorado residents"); *Cash Am. Net, LLC v. Pa. Dep't of Banking*, 8 A.3d 282, 293-296 (Pa. 2010) (Nevada-based lender, who had no physical presence in Pennsylvania but made loans via the internet to Pennsylvania consumers, subjected itself to Pennsylvania consumer lending law and regulatory jurisdiction).[6]

32. Thus, defendants, in claiming the State is interfering with on-reservation Indian affairs, again confuse what this case *is* and *is not* about.

33. Finally, despite defendants' claims, this case does not implicate tribal issues. First, Western Sky is not a tribal corporation and cannot avail itself of any tribal sovereign attributes. The Tenth Circuit, in *Breakthrough Mgmt. Group, Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1187 (10th Cir. 2010), *petition for cert. filed* (U.S. May 9, 2011) (No. 10-1389), set forth a multi-factor test that a corporation must satisfy in order to be an "arm of the tribe" entitled to a tribe's sovereignty. Two of these factors are whether the corporation is created under tribal law and whether the tribe owns and manages the corporation. *See id.*

34. Here, Western Sky fails these two tests: it was not created under tribal law, but instead is a state-chartered company; and it is privately held and wholly managed

---

[5] This decision is attached as Exhibit 6.
[6] The Ballard Spahr firm also represented the lender in *Cash Am. Net. See id.* at 284.

by Webb.  *See* Exhibits 4, 5.[7]

35.  Nor does Webb's status as a tribal member invest him with any tribal sovereign attributes.  To the contrary, in *Puyallup Tribe, Inc. v. Dep't of Game*, 433 U.S. 165, 171-172 (1977), the Court held that the "doctrine of sovereign immunity . . . does not immunize the individual members of the Tribe."  Even tribal officers – which Webb does not claim to be – are "not protected by the tribe's immunity from suit."  *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 59 (1978).

36.  Further, tribal members going off-reservation are subject to state law as is any other person.  Citing *Mescalero Apache Tribe v. Jones*, 411 U.S. 145 (1973), the Court in *Nevada v. Hicks*, 533 U.S. 353, 362 (2001), stated that, when "state interests outside the reservation are implicated, States may regulate the activities even of tribe members on tribal land."  There, the Court rejected the notion that federal law prevented state officials from "investigat[ing] or prosecut[ing] violations of state law occurring off the reservation."  *Id.* at 366.  It explained that upholding the state's authority to do so "is necessary to 'prevent [reservations] from becoming an asylum for fugitives from justice.'"  *Id.* at 364 (quoting *Fort Leavenworth R. Co. v. Lowe*, 114 U.S. 525, 533 (1885)).  *See*, *e.g.*, *Mescalero*, 411 U.S. at 147-149 (upholding state's authority to tax tribe's commercial, off-reservation activity, holding that "[a]bsent express federal law to the contrary, Indians going beyond reservation boundaries have generally been held subject to non-discriminatory state law otherwise applicable to all citizens of the State"

---

[7] Defendants' reliance on *Pourier v. S.D. Dep't of Revenue*, 658 N.W.2d 395 (S.D. 2003) (*see* Notice ¶11) is misplaced.  There, the court held only that, for purposes of whether a state could tax *on-reservation* fuel sales between Indians, a corporation wholly owned by an enrolled tribe member was considered a tribe member.  *See id.* at 403-404.

12

and rejecting as "particularly treacherous" the broad generalization that states are prohibited from enforcing their laws "'whether the [tribal] enterprise is located on or off tribal land'"); *Organized Vill. of Kake v. Egan*, 369 U.S. 60, 62-63, 75-76 (1962) (state properly could enforce licensing and police power laws over off-reservation tribal fishing activities; "state regulation of off-reservation fishing certainly does not impinge on treaty-protected reservation self-government").

37. Thus, Webb's status as a tribal member avails defendants naught.

38. In sum, the State's Complaint concerns solely state-law claims arising out of in-Colorado conduct in violation of Colorado law. If federal law applies at all, it is only in matters of defense. Accordingly, defendants improperly removed the case.

**C. The State Should Be Awarded Its Costs**

39. The Court should award the State its costs and expenses, including attorney's fees, pursuant to 28 U.S.C. § 1447(c).

40. In deciding whether to award fees, the standard is whether there exists an "objectively reasonable basis" for removal: fees should be awarded "where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). Bad faith or frivolousness is not required. *See id.* at 138 (rejecting a narrow standard); *Excell, Inc. v. Sterling Boiler & Mech., Inc.*, 106 F.3d 318, 322 (10th Cir. 1997) (bad faith not required; central factor is removal's "propriety"); *accord*, *Whitmore v. Statguard, LLC*, 2009 WL 5216941, *3 (D. Colo. 2009), *amended by* 2011 WL 1322000 (D. Colo. 2011).

41. Here, no "objectively reasonable basis" for removal exists: (a) this action

strictly is about off-reservation conduct in violation of state law; (b) defendants cite no federal statute completely displacing the State's state-law claims or otherwise expressing Congressional intent to permit removal; (c) the U.S. Supreme Court over twenty years ago held that sovereign immunity is a defense and does not give rise to removal jurisdiction; (d) neither the Indian Commerce Clause nor other tribal law supports removal; and (e) Western Sky is not tribal at all, and Webb's tribal membership matters nil.

42. Just as in *Wasden*, 2009 WL 940731 at *4, because, since 1914, U.S. Supreme Court cases "clearly foreclosed . . . removal" and federal law "has not completely preempted state law" (citing *Taylor* and *Graham)*; a costs and fees award is appropriate. *See Wasden*, at **3-4 (awarding fees).

43. Further, during a May 9, 2011, telephone call between counsel, the State offered defendants the opportunity voluntarily to remand this case. Defendants refused. This weighs in favor of a costs award. *See Excell*, *supra*, 106 F.3d at 322.

44. The State reserves the right to supplement its costs and fees request should the Court deem an award appropriate. *See, e.g.*, *In Re C & M Props., L.L.C.*, 563 F.3d 1156, 1162 n.2 (10th Cir. 2009) (court may determine in separate proceeding award of fees after remand); *Leoff v. XYZ Subdivision Land Co.*, 2011 WL 686364, *1 (D. Colo. 2011) (granting motion for fees made after remand); *see also Whitmore v. Statguard, LLC*, 2010 WL 3715133, *2 (D. Colo. 2010) (court retains jurisdiction to consider sanctions after remand).

### D. Compliance with D.C.Colo.LCivR 7.1(A)

45. Pursuant to D.C.Colo.LCivR 7.1(A), on several occasions beginning on April

11, 2011, including the May 9th conversation referred to above, ¶43, undersigned conferred with Roger P. Thomasch, Esq., defendants' counsel, about this motion and advised that the State would be filing it.  Defendants oppose it.

### **CONCLUSION**

WHEREFORE, the State requests that the Court (i) grant this motion in all respects; (ii) remand this action to the Denver District Court; and (iii) award the State its costs and expenses, including attorney's fees, together with all such further relief as the Court deems just.

Dated:     Denver, Colorado
           May 20, 2011

                              JOHN W. SUTHERS
                              Attorney General


                              s/  Paul Chessin
                              _____
                              PAUL CHESSIN, #12695*
                              Senior Assistant Attorney General
                              Consumer Credit Unit
                              Consumer Protection Section
                              Attorneys for Plaintiffs
                              1525 Sherman Street, 7th Floor
                              Denver, Colorado  80203
                              Telephone:  (303) 866-4494
                              *Counsel of Record

CERTIFICATE OF SERVICE

This is to certify that on May 20, 2011, the foregoing Plaintiffs' Motion to Remand, dated May 20, 2011, was filed with the Clerk of Court using the CM/ECF system, which will send notification to all parties, as follows:

Roger P. Thomasch, Esq.
Matthew R. Lasek, Esq.
Ballard Spahr LLP
1225 17th Street, Suite 2300
Denver, Colorado 80202

s/ Ruth Seminara