IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable R. Brooke Jackson

Civil Action No.  11-cv-00887

State of Colorado, et al.,

    Plaintiff(s),

v.

Western Sky Financial, L.L.C. et al.,

    Defendant(s).

## ORDER

Plaintiff moves to remand this case to state court for lack of federal question jurisdiction. For the reasons discussed below, the Court grants the motion.  Therefore, the Court does not consider defendant's pending motion to dismiss.

**Facts**

Plaintiffs filed this case in the Denver District Court on April 5, 2011.  They allege that Western Sky Financial, LLC, a South Dakota limited liability company, has offered, through the Internet, to make loans to Colorado consumers in amounts ranging from $400 to $2,600 with annual percentage interest rates of approximately 140 to 300%.  Martin A. Webb is alleged to be Western Sky's sole manager and executive officer and, directly or indirectly, its sole member and owner.  In 2010 Western Sky made more than 200 such loans.  Following an investigation, plaintiffs determined that Western Sky was making "unlicensed supervised loans" and imposing excessive finance charges.  After Western Sky failed to comply with a demand that it cease and

desist from making further loans, plaintiffs filed suit against Western Sky and Mr. Webb seeking injunctive relief and damages for alleged violations of the Colorado Uniform Consumer Credit Code, C.R.S. §§ 5-1-101 et seq. and the Colorado Consumer Protection Act, C.R.S. §§ 6-1-101 et seq.

Certain other allegations in the complaint must also be noted in view of the nature of the removal dispute. When individuals apply for loans with Western Sky, they sign a document called "Western Sky Consumer Loan Agreement." This agreement states that it is "governed by the Indian Commerce Clause of the Constitution of the United States of America and the laws of the Cheyenne River Sioux Tribe." Western Sky's website states that all loans "will be subject solely to the exclusive laws and jurisdiction of the Cheyenne River Sioux Tribe, Cheyenne River Indian Reservation," and that borrowers "must consent to be bound to the jurisdiction of the Cheyenne River Sioux Tribal Court, and further agree that no other state or federal law or regulation shall apply to this Loan Agreement, its enforcement or interpretation." The website also indicates that it "is a Native American owned business operating within the boundaries of the Cheyenne River Sioux Reservation, a sovereign nation located within the United States of America." Complaint ¶¶15-16.

On April 5, 2011 defendants filed a notice of removal of the case to federal court. They asserted that "because this case involves a federal question," federal jurisdiction is appropriate under 28 U.S.C. § 1331. They note plaintiffs' allegations quoted above concerning the loan agreement that states that it is governed by the Indian Commerce Clause and the laws of the Cheyenne River Sioux Tribe, that borrowers must consent to be bound to the jurisdiction of the Tribal Court, and that no other state or federal law or regulation shall apply to the agreement. They add that Mr. Webb is an enrolled member of the Cheyenne River Sioux Tribe (although his

company is neither owned nor operated by the Tribe).  They argue from those facts that "Colorado's purported state-law claims in this case are completely preempted by federal law." Notice of Removal ¶11.  In support of that position they cite a number of cases for the proposition that "Colorado may not regulate commercial activity on Indian lands in South Dakota" and other cases for the proposition that the complaint "necessarily raises a dispositive, substantial, and disputed question of federal law." *Id.* ¶¶11-12.

### Conclusions

Under the "well-pleaded complaint" rule, "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392(1987).  Only state court actions that originally could have been filed in federal court may be removed. *Id.* at 392, 398-99.  A plaintiff, as the "master of the claim," can avoid federal jurisdiction by relying solely on state law. *Ibid.*  Plaintiffs here have pled nothing more than that the financial charges that are exacted by defendants from Colorado borrowers violate Colorado consumer protection laws.  The complaint recites representations that defendants have made in their website or inserted in their loan agreements purported to bind borrowers to tribal laws and jurisdiction only in the course of describing defendants' loan program.

Defendants' arguments arising from Mr. Webb's status as a member of the Cheyenne River Sioux Tribe and his apparent claim of tribal immunity are, at most, defenses to plaintiffs' claims.  The assertion of a federal law defense to a state law claim, even federal preemption, does not enable defendants to remove a claim stated under state law to federal court. *Ibid. See also Schmeling v. NORDAM,* 97 F.3d 1336, 1339 (10th Cir. 1996).  That is specifically true with

respect to a tribal immunity defense. *See Oklahoma Tax Commission v. Graham,* 489 U.S. 838, 841 (1989).

A limited exception has been recognized in the case of "complete preemption" of a state law claim. *Caterpillar,* 482 U.S. at 393.  Complete pre-emption exists where the "pre-emptive force of a statute is so extraordinary that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Ibid. See, e.g., Metropolitan Life Ins. v. Taylor,* 481 U.S. 58, 65-67 (1987)(federal defense of ERISA preemption made case removable despite the "well-pleaded complaint rule" because of Congress' manifest intent to preempt state law and to make causes of action within the scope of the statute's civil enforcement provisions removable).  Defendants identify no statute or other law indicating a "clear Congressional intent," *Schmeling,* 97 F.3d at 1342, that a case such as this be removable.

Defendants argue that Congress has completely preempted the regulation of Indian affairs on a reservation.  However, even if that were so, it begs the question of whether the conduct of which plaintiffs complain involved regulation of Indian affairs on a reservation.  I find and conclude that it did not.  Plaintiffs allege, and defendants do not dispute, that defendants were operating via the Internet.  Complaint ¶¶9-13.  The borrowers do not go to the reservation in South Dakota to apply for, negotiate or enter into loans.  They apply for loans in Colorado by accessing defendants' website.  They repay the loans and pay the financing charges from Colorado; Western Sky is authorized to withdraw the funds electronically from their bank accounts.  The impact of the allegedly excessive charges was felt in Colorado.  Defendants have not denied that they were doing business in Colorado for jurisdictional purposes, nor does it appear that they could. *See State ex rel. Suthers v. Cash Advance,* 205 P.3d 389, 400 (Colo. App.

2008), *aff'd,* 242 P.3d 1099 (Colo. 2010). "Business conducted over the Internet that would confer jurisdiction on a state court also demonstrates that the business activity constitutes off-reservation activity." *Ibid.*

A somewhat related exception has been recognized when a federal question is an essential element of the plaintiff's claim despite plaintiff's failure to plead it. *See Schmeling,* 97 F.3d at 1339. For example, in *Muhammad v. Comanche Nation Casino,* 742 F. Supp. 2d 1268 (W.D. Okla. 2010), cited by defendants, the plaintiff alleged that she had sustained injuries from a slip and fall accident on Indian lands. The court found that a necessary element of the state-law claim was the legal right of the State of Oklahoma to exercise authority over the conduct of an enterprise by an Indian Nation on Indian lands. *Id.* at 1275-76. The court also considered the nature of the federal interest, in that case a balance struck by Congress among the interests of tribal governments, the states and the federal government in the Indian Gaming Regulatory Act concerning gaming activities on Indian lands. *Id.* at 1276-77. Collectively, those factors convinced the court that removal was appropriate. *Id.* at 1277.

Unlike that case, however, this is not a case about commercial activity on Indian lands. The facts that Mr. Webb is a member of an Indian tribe and that he owns a company that operates within the boundaries of the reservation (but is neither owned nor operated by the Tribe) are incidental to plaintiffs' claims. There is no federal question inherent in or essential to the prosecution of the claims. As indicated above, issues relating to tribal immunity are potential defenses, *see generally Suthers,* 205 P.3d 389, not bases for removal.

The question I address is whether, despite the "well-pleaded complaint rule," this case was removable under the complete preemption doctrine or because a substantial federal question is a significant element of plaintiffs' claims. I conclude that it was not. I further find that there

was no "objectively reasonable basis" for removal of this case to federal court. *See Martin v. Franklin Capital Corp.,* 546 U.S. 132, 141 (2005). There was no reasonable basis for defendants' repeated argument that the case involves regulation of Indian affairs on an Indian reservation. Defendants advanced no reasonable argument that either the Indian Commerce Clause or the Congress had completely preempted what plainly is a state law claim. Nor did they advance a reasonable argument that a federal question is an essential element of plaintiffs' claim. It is settled law that, while tribal immunity might be a defense to a state law claim, it does not provide a basis for removal. Moreover, defendants declined plaintiffs' request that they voluntarily stipulate to a remand. For all these reasons, I exercise my discretion under 28 U.S.C. § 1447(c) to award attorney's fees and costs to the plaintiffs. *See Excell, Inc. v. Sterling Boiler & Mechanical, Inc.,* 106 F.3d 318, 322 (10th Cir. 1997). This may not include fees or costs incurred in responding to defendants' motion to dismiss or fees beyond those which were both necessarily and reasonably incurred as a result of defendants' improper removal.

**Order**

Plaintiff's motion to remand [docket #20] is GRANTED. The case is remanded to the District Court for the City and County of Denver. Plaintiffs are awarded costs including attorney's fees.

DATED this 27th day of December, 2011.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge